MORRIS A. GILES and MARJORIE P. GILES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Giles v. Commissioner
Docket No. 21080-83.
United States Tax Court
T.C. Memo 1985-543; 1985 Tax Ct. Memo LEXIS 87; 50 T.C.M. (CCH) 1342; T.C.M. (RIA) 85543; October 29, 1985. Morris A. Giles, pro se. George F. Nassif, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency of $4,744.84 in petitioners' 1980 Federal income tax and an addition to tax of $420.88 under section 6651(a). [1] The issues for decision are as follows: (1) Whether petitioners are entitled to an investment tax credit in 1980; (2) Whether petitioners are entitled to a deduction for employee business expenses, and if so, for what amount; (3) Whether petitioners are entitled to a deduction for casualty and theft losses, and if so, for what amount; and (4) Whether petitioners are liable for the addition to tax under section 6651(a). FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated *89 herein by this reference. At the time of the filing of their petition, petitioners Morris A. Giles (petitioner) and Marjorie P. Giles resided in Los Angeles, California. On or after June 19, 1981, they filed their 1980 Federal income tax return with the Internal Revenue Service Center in Fresno, California. Petitioner purchased a used automobile on December 17, 1979, for $10,000. The car remained parked in petitioner's garage because he was on vacation, he did not need the car, and the car did not have license plates. When he returned in January from his vacation, petitioner began to use to automobile in his work. Petitioner was an outside salesman and used his automobile 90 percent for business travel. Petitioner received the following automobile expense reimbursements from his employer in 1980: Total
Mileage
Parking/
Fixed
Auto-related
Miles
Reimbursement *
Tolls
Allowance
Reimbursement
9261
$904.43
$154.50
$1,058.60
$2,117.53
On January 8, 1980, the President declared Los Angeles a disaster area as a result of storms. On *90 August 4, 1980, Smith Brothers Construction prepared for petitioners an estimate of proposed roof and home repair work totaling $4,650. On September 23, 1980, petitioners paid $720 by two checks that were designated for "new roof" and "repayment for roof repair advance," respectively. On their 1980 Federal income tax return, petitioners claimed an investment credit of $1,000, [2] a casualty loss of $3,400 ($3,500 minus $100), [3] and employee business expenses of $5,886. Petitioners computed their casualty loss as the difference in house value before and after the storm. The employee business expenses consisted of the following claimed auto-related expenses: Depreciation $10,000/ 7 yr.
$1,429
Gas and oil
2,471
Insurance
1,575
License and taxes
76
Repairs
870
Tires and tubes
560
Other
225
$7,206
Less: 10% personal use $720
Reimbursement 600
1,320
$5,886
Respondent disallowed the investment credit, the employee business expense deduction, and the casualty loss deduction. *91 OPINION Investment Credit
Respondent denied petitioners' investment credit for 1980 on the ground that petitioner's automobile was not placed in service in 1980. The burden is on petitioner to prove entitlement to the investment credit in 1980. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
Section 1.46-3(d), Income Tax Regs., provides in pertinent part: (d) Placed in service. (1) For purposes of the credit allowed by section 38, property shall be considered placed in service in the earlier of the following taxable years: (i) The taxable year in which, under the taxpayer's depreciation practice, the period for depreciation with respect to such property begins; or (ii) The taxable year in which the property is placed in a condition or state of readiness and availability for a specifically assigned function, whether in a trade or business, in the production of income, in a tax-exempt activity, *92 or in a personal activity. Thus, if property meets the condition of subdivision (ii) of this subparagraph in a taxable year, it shall be considered placed in service in such year notwithstanding that the period for depreciation with respect to such property begins in a succeeding taxable year * * *. In applying the "placed in service" test of the statute, section 46(c), and the regulation quoted above, courts have determined when property was first operational. For example, an air conditioning unit was held to have been placed in service in the year of installation although taxpayer did not use it until the next year. Schrader v. Commissioner,582 F.2d 1374 (6th Cir. 1978), affg. a Memorandum Opinion of this Court. A scrapmetal shredder and link-belt crane were held to have been placed in service in the year assembled and found to be operational although not used until the next year because the power company failed to connect the electrical lines. SMC Corp. v. United States,675 F.2d 113 (6th Cir. 1982). In this case, petitioner's automobile was operational *93 when it was acquired in 1979. The failure to use it in that year was due solely to petitioner's convenience or lack of necessity. Thus, 1979 is the year in which the automobile was placed in service, and the investment tax credit is not allowable in 1980. Employee Business Expenses
Section 162(a) allows taxpayers to deduct "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Thus, an employee's automobile expenses are deductible to the extent they are incurred in carrying on his business. Where an automobile is used for business and personal purposes, section 262 prohibits the deduction of any expense attributable to personal use. Here, petitioner used his automobile 90 percent for business purposes. To support a business deduction for automobile expenses, a taxpayer must substantiate the expenditures. Section 1.162-17(d)(1)(ii), Income Tax Regs., provides that the Commissioner may require *94 anyone to substantiate business expenses, particluarly "[a] taxpayer whose expenses exceed the total of amounts charged to his employer and amounts received through advances, reimbursements or otherwise and who claims a deduction on his return for such excess." Petitioner sought to deduct such an excess in the amount of $5,886. The burden of proof is on petitioner. Welch v. Helvering,supra;Rule 142(a), Tax Court Rules of Practice and Procedure. He must show not only that the expenses were paid or incurred but also that they were ordinary and necessary business expenses. Section 1.162-17(d)(2), Income Tax Regs. Based on the record, petitioner has failed to prove that he incurred actual expenses in excess of the reimbursed amount. A schedule in petitioner's 1980 tax return contained a list of automobile expenses. Petitioner, however, failed to produce any records or other evidence to substantiate any of the expenses except depreciation in the amount of $1,286 ($9,000 / 7). Petitioner argues in his post-trial brief that he incurred *95 repairs expense. Such argument, however, does not constitute evidence. Rule 143(b), Tax Court Rules of Practice and Procedure. Thus, petitioner has not proven any actual expenses during 1980 other than depreciation. Petitioner's schedule reported an employer reimbursement of $600. It appears from petitioner's testimony that $600 was selected arbitrarily: "I gave in an additional $600 on my taxes which I really shouldn's have. It should have been a negative amount." Notwithstanding, petitioner argues in his post-trial brief that $904.43, the mileage reimbursement, should be used to offset his automobile expenses. Petitioner, however, must include all reimbursements from his employer for automobile related expenses. In lieu of determining the actual costs of operating an automobile for business use, the Commissioner permits employees to take a standard deduction, based upon the number of miles driven during the year for business purposes. For 1980, employees could deduct a standard rate *96 of 20 cents per mile for the first 15,000 miles of business use and 11 cents per mile for each mile of business use in excess of 15,000 miles. Rev. Proc. 80-7, 1980-1 C.B. 590, modified by Rev. Proc. 80-321980-2 C.B. 767, and Rev. Proc. 81-54, 1981-2, C.B. 649, superceded by Rev. Proc. 52-61, 1982-2 C.B. 849, modified by Rev. Proc. 83-74, 1983-2, C.B. 593. In 1980, petitioner traveled 9,261 business miles and paid $154.50 in parking fees and tolls, for which the Commissioner allows a separate deduction. This amounts to a total allowable automobile expense deduction of $2,006.70 ($1,852.20 + $154.50); however, petitioner's reimbursement, $2,117.53, was greater. Therefore, petitioner is not entitled to the additional employee business expense deduction he claimed. Casualty Loss
Section 165(a) permits individuals a deduction for casualty losses in excess of $100. Petitioners bear the burden of proof and must support their claim for a casualty loss deduction. Welch v. Helvering,supra;Kemper v. Commissioner,269 F.2d 184 (8th Cir. 1959), *97 affg. 30 T.C. 546 (1958); Rule 142(a), Tax Court Rules of Practice and Procedure. Petitioners must prove that they sustained a loss as the direct result of the storm, and, if so, the amount of the loss. On their tax return, petitioners computed the loss as the difference in value of their home before and after the storm. The amount claimed, however, has not been supported by expert appraisal or other competent evidence. At trial, petitioner offered an estimate of repair work. Section 1.165-7(a)(2)(ii), Income Tax Regs., allows cost of repairs as a measure of damages if the repairs are actually made. Since the estimated repair work was not done, the estimate serves no evidentiary purpose. Lamphere v. Commissioner,70 T.C. 391, 396 (1978); Farber v. Commissioner,57 T.C. 714, 719 (1972). At trial, petitioner also provided a photo of his "new" roof and two $360 canceled checks, one with notation "new roof" and the other with the notation "repayment for roof repair advance." The repair work, however, was done *98 more than 8 months after the President's declaration of disaster. Thus, we are not persuaded that they incurred a loss as the direct result of the storm rather than from normal wear and tear or gradual deterioration of their property. See Axelrod v. Commissioner,56 T.C. 248, 256 (1971). Addition to Tax
Respondent determined an addition to tax for 1980 pursuant to section 6651(a). The burden of proof with respect to this addition to tax is on petitioners. Bixby v. Commissioner,58 T.C. 757, 791 (1972). Petitioners have not presented any evidence at trial to carry their burden of showing that they had reasonable cause for late filing of the return. Accordingly, we sustain respondent's determination. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
*. ↩
January - June, 19
$ .0885 per mile
June, 20 - December
$ .104 per mile
2. The parties agree that if petitioners are entitled to an investment credit in 1980, the proper amount is $900, not $1,000, because petitioners used the car 90 percent for business. ↩
3. At trial and in their brief, petitioners argued storm damage, as claimed in their return. In the petition, however, they alleged that the loss resulted from an auto theft. This inconsistency is unexplained.↩